# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEBRA STEWART,<br><br>        Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>        Defendant.<br>_____ | 1:09-cv-1928 SKO<br><br>**ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT**<br><br>(Doc. 1) |

## INTRODUCTION

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying her application for Supplemental Security Income ("SSI") pursuant to Title XVI of the Social Security Act. 42 U.S.C. §§ 405(g), 1383(c)(3). The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[1]

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. (Docs. 8, 9.) On April 7, 2010, the action was reassigned to the Honorable Sheila K. Oberto for all purposes. *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73; *see also* L.R. 301, 305.

# FACTUAL BACKGROUND

Plaintiff was born in 1967, completed the tenth grade, and has no past relevant work. (Administrative Record ("AR") 80, 124, 167.) On August 16, 2004, Plaintiff filed an application for SSI, alleging disability beginning on August 10, 2001, due to lumbar disc disease and diabetes. (AR 87, 124-27.)

**A.      Medical Evidence**

**1.      Dr. Tran**

On May 12, 2007, Juliane Tran, M.D., performed a consultative orthopedic examination of Plaintiff. (AR 617-21.) Dr. Tran stated that Plaintiff's straightaway gait was normal, but generally slow. (AR 619.) Plaintiff declined to toe-heel walk due to pain, and did not use an assistive device. (AR 619.) Plaintiff's straight leg test raising was negative on the right, with complaints of back pain, and the straight leg raising test in the sitting position produced back pain, without radicular symptoms. (AR 619.) Plaintiff's motor strength was 5/5 bilaterally in all extremities, except for the quadriceps, which were 4-/5. (AR 620.)

Dr. Tran opined that Plaintiff was capable of lifting 20 pounds occasionally and 10 pounds frequently, sitting for six hours daily and standing for four hours, and that she may need to alternate between sitting and standing throughout the day. (AR 620.) Dr. Tran also opined that Plaintiff could frequently bend and stoop, and did not need an assistive device to ambulate. (AR 621.)

**2.      Dr. Pineda**

On August 27, 2007, Gregorio Pineda, M.D., a neurologist, completed a consultative neurological examination of Plainitff. (AR 630-31.) Dr. Pineda's diagnoses included "lumbosacral syndrome, post op, persisting pain," "diabetic polyneuropathy," and "podiatric problem, both lower extremities." (AR 631.) Because of these problems, Dr. Pineda opined that "any job which requires any amount of standing or prolonged sitting would be very difficult for [Plaintiff]." (AR 631.)

On January 25, 2008, Dr. Pineda conducted a nerve conduction test, which revealed a "normal nerve conduction study of both lower extremities" and possibly an early neuropathy.[2] (AR 642.)

### 3. Dr. Hirokawa

On September 9, 2007, Greg Hirokawa, Ph.D., completed a consultative psychiatric evaluation of Plaintiff. (AR 632-40.) Dr. Hirokawa diagnosed Plaintiff with adjustment disorder with mixed emotional features, and assigned a GAF score of 64.[3] (AR 635-36.) Dr. Hirokawa noted that Plaintiff's "symptoms of depression and anxiety appear to be within the mild range . . . . The likelihood of [Plaintiff's] mental condition improving within the next 12 months is fair." (AR 626.)

Dr. Hirokawa opined that Plaintiff's ability to understand, remember, and carry out simple and complex instructions was mildly limited. (AR 638.) Plaintiff's ability to make judgments on simple and complex work-related decisions was also mildly limited. (AR 638.) Plaintiff's ability to interact appropriately with supervisors, co-workers, and the public was mildly limited. (AR 639.) Finally, Plaintiff's was mildly limited in her ability to respond appropriately to usual work situations and to changes in a routine work setting. (AR 639.)

### 4. State Agency Physician

On January 10, 2005, Lavanya Bobba, M.D., a state agency medical consultant, assessed Plaintiff's physical residual functional capacity ("RFC")[4] and opined that Plaintiff could

---

[2] Neuropathy denotes a functional disturbance or pathological change in the peripheral nervous system. *Dorland's Illustrated Medical Dictionary* 1287 (31st ed. 2007) (hereinafter *Dorland's*).

[3] The GAF, or global assessment of functioning, scale rates psychological, social, and occupational functioning; it is divided into ten ranges of functioning. Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. text rev. 2000). A GAF rating of 61 to 70 indicates some mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (e.g., occasional truancy or theft within the household), but the individual is "generally functioning pretty well" and "has some meaningful interpersonal relationships." *Id.* at 34.

[4] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule. Social Security Ruling 96-8p. The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments. *Id.* "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, *inter alia*, medical records, lay evidence, and

3

(1) occasionally lift and/or carry 20 pounds and frequently 10 pounds; (2) stand and/or walk for a total of about six hours in an eight-hour workday; (3) sit for about six hours in an eight-hour workday; and (4) perform unlimited pushing and/or pulling with the upper and lower extremities. (AR 342.) Further, Plaintiff could occasionally climb, balance, stoop, kneel, crouch, and crawl. (AR 343.) Finally, Plaintiff had no manipulative, visual, communicative, or environmental limitations other than avoiding concentrated exposure to "[f]umes, odors, dusts, gases, poor ventilation, etc." (AR 344-45.) Another state agency physician affirmed Dr. Bobba's assessment on May 24, 2005. (AR 341.)

**B.     Administrative Hearing**

The Commissioner denied Plaintiff's application initially and again on reconsideration; consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 85-101.)  On June 5, 2007, ALJ Eve B. Godfrey in San Diego held a hearing by video teleconferencing in which a medical expert, a vocational expert ("VE"), and Plaintiff in Bakersfield testified. (AR 651-98.)

**1.     Plaintiff's Testimony**

Plaintiff wore a brace on her foot at the hearing, where she testified that she lived with her husband and ten-year old son. Plaintiff had not worked in over twenty years and could not work because of problems with her back, feet, neck, and with diabetes. (AR 656, 661-662, 672, 674-75.) Plaintiff's daily activities were limited to watching television, "tinkering," sometimes watering plants, folding laundry, and walking. (AR 662-663, 664.) Plaintiff occasionally picked up her son from school, but did not take him anywhere, and helped him with his homework. (AR 663-64, 668.)

According to Plaintiff, she had to lie down during the day about four to five times weekly and had problems concentrating. (AR 670, 672.) Plaintiff smoked a half a pack of cigarettes per day. (AR 664.) Plaintiff further testified that she has had asthma since she was a child. (AR 676.)

---

'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

### 2. Medical Expert Testimony

Victor Schorn, M.D., a neurosurgeon, testified that, as of August 16, 2004, Plaintiff's impairments met or medically equaled a listed impairment, but could not give an exact listing. (AR 120-21, 676.) The doctor further testified that Plaintiff had significant disc herniation at the L3-L4 levels as well as two other levels. (AR 678.) Dr. Schorn opined that Plaintiff continued to demonstrate evidence of radiculopathy,[5] neuropathy, and side effects from medication. (AR 679.) Dr. Schorn believed that the side effects from Plaintiff's medications would interfere with her ability to maintain persistent concentration and pace. (AR 692.) Dr. Schorn, therefore, initially opined that Plaintiff was not able to sustain a forty-hour work week. (AR 679-80.) He believed that Plaintiff would have difficulty sitting for six hours a day because of back pain. (AR 685-86.) Dr. Schorn further testified that Plaintiff should be able to change positions throughout the day, including lying down. (AR 686.)

Dr. Schorn testified that, to diagnose neuropathy, an electromyogram ("EMG")[6] and nerve conduction studies were needed. (AR 689.) He further testified that Plaintiff should exercise, stop smoking, and lose forty to fifty pounds. (AR 689, 691.)

The ALJ further summarized Dr. Schorn's testimony in her decision as follows:

> Medical Expert Victor Shorn [sic], M.D., testified that he had reviewed the entire medical file . . . . He gave a detailed longitudinal summary of [Plaintiff's] medical history noting that her problems with her hand and feet was [sic] not from her neck but from her diabetes, but further found that a lot of patients with diabetes didn't do as well as [Plaintiff]. [Plaintiff] continued to be in pain from her low back with radiculopathy and neuropathy and that it was his expert medical opinion that [Plaintiff] could perform sedentary work, taking into consideration [Plaintiff's] medications [sic] side effects. Dr. Shorn [sic] noted that [Plaintiff] was not taking her medications in 2005 and found that she should lose 40-50 pounds of weight, stop smoking, and exercise. He noted that [Plaintiff] had not had a nerve conduction study or EMG and had to "read between the lines" of the record to determine that [Plaintiff] had diabetic neuropathy. [Plaintiff's] subsequent nerve conduction study of her lower extremities on January 25, 2008[,] was normal.

---

[5] Radiculopathy denotes disease of the nerve roots. *Dorland's*, *supra*, at 1595.

[6] Electromyography denotes an electrodiagnostic technique for recording the extracellular activity of skeletal muscles at rest, during voluntary contractions, and during electrical stimulation. *Dorland's*, *supra*, at 609.

5

(AR 80 (internal citations omitted).)

### 3. VE Testimony

The VE testified that a hypothetical person of Plaintiff's age, education, and work experience who was limited to sedentary work[7] involving simple, repetitive tasks and who had to avoid contact with the general public could perform unskilled, sedentary jobs in the national economy such as a final assembler or film touch-up inspector. (AR 681-82.) An individual could alternate positions while performing these jobs. (AR 688.)

The VE also testified that a hypothetical person of Plaintiff's age, education, and work experience could perform work at the light exertional level.[8] (AR 682-83.) Such a person could not perform any work, however, if that person could not maintain an adequate persistence and pace for forty hours in a week, or if that person had to lie down three to five times in an eight-hour day for up to twenty minutes at a time. (AR 683-84.)

**C.  ALJ's Decision**

On February 29, 2008, the ALJ issued a decision finding Plaintiff not disabled since the application date of August 16, 2004. (AR 68-82.) Specifically, the ALJ found that Plaintiff (1) had not engaged in substantial gainful activity since August 16, 2004; (2) had an impairment or a combination of impairments that is considered "severe" based on the requirements in the Code of Federal Regulations; (3) did not have an impairment or combination of impairments that meets or equals one of the impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1; and (4) could perform jobs that existed in the national economy. (AR 73-81.)

The ALJ found that Plaintiff had the RFC to perform sedentary work limited to simple, routine tasks that did not require contact with the general public and others and that had a sit-stand

---

[7] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. § 416.967(a).

[8] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 416.967(b).

option every twenty minutes. (AR 76.) The ALJ concurred with Dr. Schorn's opinion that Plaintiff could perform sedentary work. (AR 80.)

In determining that Plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1, the ALJ found as follows:

> The record does not report the existence of any functional limitations and[/]or diagnostic test results, which would suggest that the impairments meet or equal the criteria of any specific listing. In addition, no treating or examining physician has reported findings, which either meet or are equivalent in severity to the criteria of any listed impairment, nor are such findings indicated or suggested by the medical evidence of record.
>
> The undersigned specifically considered listings 1.04 [regarding disorders of the spine] and 9.08 [regarding diabetes mellitus]. The medical record and the testimony of [Plaintiff] fail to provide sufficient support for a finding that she meets the limitations required by these listings.

(AR 76.)

Plaintiff sought review of this decision before the Appeals Council, which denied review on September 8, 2009. (AR 5-9.) The ALJ's decision, therefore, became the final decision of the Commissioner. 20 C.F.R. § 416.1481.

**D.  Plaintiff's Appeal**

On November 2, 2009, Plaintiff filed a complaint before this Court seeking review of the ALJ's decision. Plaintiff contends that the ALJ improperly rejected Plaintiff's testimony and the medical expert's testimony, and posed an incomplete hypothetical question to the VE.

## SCOPE OF REVIEW

The ALJ's decision denying benefits "will be disturbed only if that decision is not supported by substantial evidence or it is based upon legal error." *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999). In reviewing the Commissioner's decision, the Court may not substitute its judgment for that of the Commissioner. *Macri v. Chater*, 93 F.3d 540, 543 (9th Cir. 1996). Instead, the Court must determine whether the Commissioner applied the proper legal standards and whether substantial

7

evidence exists in the record to support the Commissioner's findings. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

"Substantial evidence is more than a mere scintilla but less than a preponderance." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)). The Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citation and internal quotation marks omitted).

## **APPLICABLE LAW**

An individual is considered disabled for purposes of disability benefits if he is unable to engage in any substantial, gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted, or can be expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see also Barnhart v. Thomas*, 540 U.S. 20, 23 (2003). The impairment or impairments must result from anatomical, physiological, or psychological abnormalities that are demonstrable by medically accepted clinical and laboratory diagnostic techniques and must be of such severity that the claimant is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial, gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(2)-(3), 1382c(a)(3)(B), (D).

The regulations provide that the ALJ must undertake a specific five-step sequential analysis in the process of evaluating a disability. In the First Step, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If not, in the Second Step, the ALJ must determine whether the claimant has a severe impairment or a combination of impairments significantly limiting him from performing basic work activities.

*Id.* §§ 404.1520(c), 416.920(c). If so, in the Third Step, the ALJ must determine whether the claimant has a severe impairment or combination of impairments that meets or equals the requirements of the Listing of Impairments (the "Listings"), 20 C.F.R. 404, Subpart P, App. 1. *Id.* §§ 404.1520(d), 416.920(d). If not, in the Fourth Step, the ALJ must determine whether the claimant has sufficient RFC despite the impairment or various limitations to perform his past work. *Id.* §§ 404.1520(f), 416.920(f). If not, in Step Five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in significant numbers in the national economy. *Id.* §§ 404.1520(g), 416.920(g). If a claimant is found to be disabled or not disabled at any step in the sequence, there is no need to consider subsequent steps. *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. §§ 404.1520, 416.920.

## DISCUSSION

**A.   The ALJ Failed to Explain Her Rejection of Dr. Schorn's Testimony**

In finding that Plaintiff had the RFC to perform a reduced range of sedentary work, the ALJ cited Dr. Schorn's testimony that Plaintiff was capable of performing such work, although the ALJ did not refer to Dr. Schorn's initial testimony that Plaintiff's impairments met or medically equaled a listed impairment. (AR 76, 80, 676-77.) According to Plaintiff, the ALJ improperly rejected this portion of Dr. Schorn's testimony. The Commissioner maintains, however, that the ALJ was not required to discuss every piece of evidence so long as the ALJ's decision adequately summarized and evaluated the evidence.

### 1.   Legal Standard

If a claimant has an impairment or combination of impairments that meets or equals a condition outlined in the Listing of Impairments, then the claimant is presumed disabled at step three, and the ALJ need not make any specific finding as to his or her ability to perform past relevant work or any other jobs. *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001) (citing 20 C.F.R. § 404.1520(d)). An ALJ must evaluate the relevant evidence before concluding that a claimant's impairments do not meet or equal a listed impairment. A boilerplate finding that a claimant's

impairment does not satisfy the Listings is insufficient. *See Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990) (holding that ALJ erred by failing to consider evidence of equivalence). An impairment matches a listing if it meets all of the specified medical criteria. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see also Tackett*, 180 F.3d at 1098; 20 C.F.R. § 416.925(d).

### 2. Analysis

In this case, the ALJ failed to state any reasons for rejecting Dr. Schorn's opinion that Plaintiff's impairments met or equaled a listed impairment. The ALJ's failure to do so warrants remand for further proceedings. The ALJ was obligated to consider all relevant evidence in the record before concluding that Plaintiff's impairments did not meet or equal a listed impairment. *See Lewis*, 236 F.3d at 512. Contrary to the Commissioner's assertion, the Court cannot consider harmless the ALJ's failure to explain her implicit rejection of Dr. Schorn's opinion that Plaintiff's impairments met or medically equaled a listed impairment because if a claimant has impairments listed in the Listing of Impairments, the claimant is disabled without further inquiry as to RFC and ability to perform past or other work. 20 C.F.R. § 416.920(a)(4)(iii). Thus, the ALJ's error was not inconsequential to the ultimate nondisability determination. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (defining harmless error). Rather, Dr. Schorn's opinion was significant and probative on the issue of disability, and the ALJ was obligated to explain why she was rejecting it. *See Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984) (per curiam) (holding that ALJ must explain why "significant probative evidence has been rejected").

The Commissioner maintains that "the ALJ read Dr. Schorn's opinion with the caveats it contained," although the ALJ did not "expressly state this." The Court is limited to reviewing the findings of the ALJ and to reviewing the specific facts and reasons that the ALJ asserts. *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003). The Court cannot make findings for the ALJ. *Id.* Moreover, the Court cannot affirm the decision on a ground that the ALJ did not consider in making her decision. *See Pinto v. Massanari*, 249 F.3d 840, 847 (9th Cir. 2001) ("[W]e cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision." (citing

*SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947))). Accordingly, despite the Commissioner's *post hoc* reasoning, the ALJ's decision prevents the Court from conducting a meaningful review. The Court, therefore, remands this case to the Commissioner to clarify the ALJ's finding at step three.

In addition, Plaintiff contends that the ALJ improperly rejected Plaintiff's testimony and failed to ask the VE a complete hypothetical question. The Court need not consider these arguments in light of the need for reversal on other grounds. *See Marcia*, 900 F.2d at 177 n.6 ("Because we remand for reconsideration of step three, we do not reach the other arguments raised."); *Pendley v. Heckler*, 767 F.2d 1561, 1563 (11th Cir. 1985) (per curiam) ("Because the 'misuse of the expert's testimony alone warrants reversal,' we do not consider the appellant's other claims."). Further, the record is not sufficiently developed to support a determination of disability without further proceedings. *See Bunnell v. Barnhart*, 336 F.3d 1112, 1115-16 (9th Cir. 2003) (where there are outstanding issues that must be resolved before a determination of disability can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated, remand is appropriate).

**B.     Remand Is Required**

"The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). In Social Security cases, the decision to remand to the Commissioner for further proceedings or simply to award benefits is within the discretion of the court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). "If additional proceedings can remedy defects in the original administrative proceedings, a social security case should be remanded. Where, however, a rehearing would simply delay receipt of benefits, reversal [and an award of benefits] is appropriate." *Id.* (alteration in original) (internal quotation marks omitted). The Court finds that remand for further proceedings is appropriate for clarification regarding the ALJ's determination at step three.

**CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence and is, therefore, REVERSED and the case REMANDED to the ALJ for further proceedings consistent with this order. The Clerk of this Court is DIRECTED to enter judgment in favor of Plaintiff Debra Stewart and against Defendant Michael J. Astrue, Commissioner of Social Security.

IT IS SO ORDERED.

**Dated:    March 24, 2011**                          /s/ Sheila K. Oberto
                                                                   UNITED STATES MAGISTRATE JUDGE